**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| CHRISTOPHER MCDONALD, § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:16-CV-2354-M-BK |
| § | |
| CITY OF DALLAS, § | |
| MICHAEL SCOTT IRWIN, and § | |
| MANUEL ANTONIO ORTIZ, § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Judge's *Standing Order of Reference*, Doc. 17, the Court now considers Defendant City of Dallas' partial *Motion to Dismiss*, Doc. 16. For the reasons that follow, it is recommended that Defendant's motion be **GRANTED**.

**I. BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of an altercation between Plaintiff, Christopher McDonald, and two City of Dallas police officers, Michael Scott Irwin ("Officer Irwin") and Manuel Antonio Ortiz ("Officer Ortiz") (collectively, "the Officers"). To develop a robust factual background, it bears mentioning that in 1998, Plaintiff alleges to have been involved in a car accident where he suffered a "near-death brain injury," fractured his skull, crushed the base of his brain, broke both his legs, dislocated his jaw, and broke his neck. Doc. 11 at 4. As a result of his serious injuries, Plaintiff spent 28 days in a coma, 111 days in the hospital, and underwent numerous surgeries, which resulted in the insertion of six titanium plates into his skull. Doc. 11 at 4. Since that time, Plaintiff has received disability benefits, as well as medication for the anxiety and depression stemming from the accident. Doc. 11 at 4.

In August 2014, Plaintiff visited his "on-again, off-again" girlfriend at the hotel where she was staying in Dallas, Texas, as he had done many times previously. Doc. 11 at 4-5. After drinking alcoholic beverages, Plaintiff's girlfriend suddenly[1] demanded that he leave her room or she would call the police. Doc. 11 at 5. Plaintiff alleges that he could not leave because he was intoxicated, and his girlfriend called the police to report a domestic disturbance, asking that Plaintiff be removed from the premises. Doc. 11 at 5. When the Officers arrived on the scene, Officer Ortiz demanded that Plaintiff leave the room. Doc. 11 at 6. When Plaintiff did not immediately exit, Officer Ortiz rushed into the room, ordered Plaintiff to put his hands behind his back, and "violently shoved" him against the wall. Doc. 11 at 6. Officer Ortiz then tackled Plaintiff to the floor, whereupon Officer Irwin – who had been called into the room – put his full body weight on Plaintiff as Officer Ortiz placed him in handcuffs. Doc. 11 at 6. One officer then said "are you [Plaintiff] going to take it like a man or cry like a bitch?" Doc. 11 at 6. After he was placed on the bed, handcuffed and immobile, Plaintiff claims Officer Irwin elbowed him in his left eye, and Officer Ortiz punched him in his right eye, causing him to briefly lose consciousness. Doc. 11 at 6-7. Plaintiff claims that the Officers then pressured his girlfriend into signing a statement to the effect that he had abused her.[2] Doc. 11 at 7.

Plaintiff alleges that after his arrest, he received no treatment for his injuries at the scene; but upon arrival at the jail, the attending nurse insisted that he immediately be taken to Parkland Memorial Hospital, where he would spend five days receiving treatment. Doc. 11 at 7. Plaintiff was subsequently airlifted to a facility where he received emergency brain surgery, to-wit: two

---

[1] Plaintiff alleges that his girlfriend, who he does not name, suffers from bipolar disorder. Doc. 11 at 4. As a result, he claims that when she fails to take her medication – which she often does – she is prone to "erratic and unpredictable" behavior. Doc. 11 at 4-5.
[2] Plaintiff avers that while he has no criminal record or history of domestic abuse, his girlfriend has abused him in the past. Doc. 11 at 5.

holes were drilled into his head to reduce swelling; another set of titanium plates were inserted into his skull; and he received over 20 stitches. Doc. 11 at 8. While the charges related to the incident were later dropped, Plaintiff alleges that the physical and mental toll of the altercation remains, as he suffers from "physical pain, severe headaches, dizzy spells, imbalance, memory loss, anxiety, depression, and an inability to carry out basic tasks." Doc. 11 at 8.

In August 2016, Plaintiff filed his *Original Complaint* against the City of Dallas ("the City"), Officer Irwin, and Officer Ortiz, Doc. 1, which the City then moved to partially dismiss, Doc. 5. In September 2016, while the City's motion was pending, Plaintiff filed his *First Amended Complaint*, Doc. 11, asserting claims against the City and the Officers under 42 U.S.C. §§ 1983 and 1988, alleging that the Officers unlawfully arrested him, used excessive force, and failed to provide him with medical care for his injuries. Doc. 11 at 25. The Officers' actions, Plaintiff claims, were the result of the City's failure to adequately supervise and train its officers, particularly Officer Irwin, who Plaintiff alleges was known to have a "propensity for violence." Doc. 11 at 21-22. Furthermore, Plaintiff claims that the City's use of force policy gives officers broad discretion in the use of potentially fatal force, like brachial stuns.[3] Doc. 11 at 22. For his physical and mental injuries, Plaintiff seeks compensatory and punitive damages, attorneys' fees, and court costs. Doc. 11 at 28-29.

The City now moves to dismiss Plaintiff's Fourteenth Amendment claims for (1) unlawful seizure, (2) use of excessive force, (3) denial of medical care, and (4) procedural due process and equal protection violations. Doc. 16 at 6. After Plaintiff's response, Doc. 22, and the City's reply, Doc. 23, the motion is now ripe for consideration.

---

[3] A brachial stun is performed by hitting an individual's brachial nerve (where the neck meets the shoulder) with a closed fist, weapon, or other object.

## II. LEGAL STANDARD

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In order to overcome a Rule 12(b)(6) motion, a plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). The complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity, and the district court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quotation omitted).

## III. ARGUMENTS AND ANALYSIS

### A. Unlawful Seizure and Excessive Force – Fourteenth Amendment

The City first moves to dismiss Plaintiff's unlawful seizure and excessive force claims, arguing that such claims arise under the Fourth – not the Fourteenth – Amendment. Doc. 16 at 10. In response, Plaintiff concedes that "the Fourth Amendment is the main source of the search and seizure and excessive force claims." Doc. 22 at 8. When the United States Constitution "provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (quotation marks omitted). Here, the Fourth Amendment provides the explicit source of the constitutional protection for Plaintiff's claims. *See Graham*, 490 U.S. at 394 (holding that excessive force claims in the context of arrests should be analyzed under the

Fourth, not the Fourteenth, Amendment); *see also Searcy v. Wester*, No. 3:12-CV-3891-M, 2015 WL 694927, at *3 (N.D. Tex. Feb. 17, 2015) (Lynn, J.) (finding that unlawful detention and arrest claims arise under the Fourth Amendment). Thus, Plaintiff's unlawful seizure and excessive force claims brought under the Fourteenth Amendment should be dismissed.

### B. Denial of Medical Care – Fourteenth Amendment

Additionally, the City argues that Plaintiff's denial of medical care claim lacks facial plausibility and should be dismissed. Doc. 16 at 12. Specifically, the City argues that Plaintiff fails to plead facts indicating that the Officers were deliberately indifferent to his medical needs, that is, that following the altercation the Officers were subjectively aware of a substantial risk of serious medical harm to Plaintiff and consciously disregarded that risk. Doc. 16 at 9-10. In response, Plaintiff contends that the deliberate indifference standard is inapplicable, given the Supreme Court's ruling in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), and that he need only show that the Officers' actions were objectively unreasonable under the circumstances. Doc. 22 at 10-11.

Plaintiff's reliance on the holding in *Kingsley* is misplaced. *Kingsley* is silent regarding denial of medical care claims, holding only that a pretrial detainee's excessive force claim is governed by the objective unreasonableness standard. *See Kingsley*, 135 S. Ct. at 2473. Additionally, since *Kinglsey* was decided, the Court of Appeals for the Fifth Circuit has continued to apply the deliberate indifference standard when a pre-trial detainee's denial of medical care claim, as here, arises out of a single act or omission. *See, e.g., Zimmerman v. Cutler*, ___ F.App'x ___, 2016 WL 5400105, at *6 (5th Cir. 2016) ("In this circuit, a constitutional claim by a pretrial detainee arising from a one-time denial of medical care is governed 'by a standard of subjective deliberate indifference as enunciated by the Supreme

Court in *Farmer* [*v. Brennan*, 511 U.S. 825].'") (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 643 (5th Cir.1996)). Thus, the subjective deliberate indifference standard applies to Plaintiff's claim.

"The standard for [a claim premised on the denial of medical care] is well-established: the plaintiff must show that an officer acted with subjective knowledge of a substantial risk of serious medical harm, followed by a response of deliberate indifference." *Hill v. Carroll Cty., Miss.*, 587 F.3d 230, 237-38 (5th Cir. 2009). In other words, a plaintiff must "show that the defendant acted with deliberate indifference to his serious medical needs, meaning that the defendant was subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk." *Lacy v. Shaw*, 357 F. App'x 607, 609 (5th Cir.2009) (per curiam) (citing *Hare*, 74 F.3d at 647–48)). To meet the "extremely high standard" of deliberate indifference, Plaintiff must show that the Officers engaged in some "conduct that would clearly evince a wanton disregard for any serious medical needs," including refusing to treat him, ignoring complaints of a serious medical need, or intentionally treating him incorrectly. *See Domino v. Tex. Dep't of Crim. Justice,* 239 F.3d 752, 756 (5th Cir. 2001). A delay in treatment violates the constitutional right to medical care only when "there has been deliberate indifference [that] results in substantial harm." *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006) (citation omitted) (alteration in original). Under this standard, Plaintiff fails to allege a plausible claim of deliberate indifference to medical needs against Defendants.

Moreover, it is undisputed that Plaintiff received medical care for his head injury. Following his arrest and transport to Lew Sterrett Jail, Plaintiff was taken to Parkland Memorial Hospital where he received treatment over the course of his five-day stay, Doc. 11 at 7; he was airlifted via Care Flight for emergency brain surgery; he had holes drilled into his head to reduce

6

swelling; and he had additional titanium plates inserted into his skull.  Therefore, Plaintiff's claim is properly characterized as one premised on a delay in treatment, rather than outright denial of medical care.  Thus, for Plaintiff to establish a violation of his constitutional right to adequate medical care, he must allege and support with plausible facts that the deliberate indifference resulted in substantial harm.  *Easter*, 467 F.3d at 463.  Plaintiff has failed to do so.  While Plaintiff notes the injuries he suffered during his arrest, he fails to allege any harm – much less substantial harm – that resulted from the delay in treatment.  Therefore, regardless of whether Plaintiff sufficiently alleged deliberate indifference on the part of the Officers, his failure to allege the requisite substantial harm proves fatal to his denial of medical care claim, and it should be dismissed.

### C.  Procedural Due Process and Equal Protection Claims – Fourteenth Amendment

Lastly, the City moves to dismiss Plaintiff's procedural due process and equal protection claims also asserted under the Fourteenth Amendment.  Doc. 16 at 11.  In his response, Plaintiff fails to address the City's contentions regarding his procedural due process and equal protection claims.  *See* Doc. 22.  "Failure to pursue a claim beyond the initial complaint constitutes abandonment." *Osborn v. Bank of New York Mellon*, No. 3:16-CV-0308-G, 2016 WL 3211771, at *2 (N.D. Tex. May 13, 2016) (Stickney, J.), *adopted by* 2016 WL 3190243 (N.D. Tex. June 7, 2016) (Fish, J.).  Therefore, because Plaintiff fails to defend his due process and equal protection claims, he is deemed to have abandoned them.  *See Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (plaintiff abandoned claim where she failed to defend claim in response to defendant's motion to dismiss); *Osborn*, 2016 WL 3211771, at *2 (same).  Accordingly, Plaintiff's due process and equal protection claims asserted against the City under the Fourteenth amendment should be dismissed.

## IV. LEAVE TO AMEND

Plaintiff requests leave to again amend his complaint if one or more of his claims are found to be insufficiently pled. Doc. 22 at 13. The Federal Rules of Civil Procedure urge courts to grant leave to amend "when justice so requires." FED. R. CIV. P. 15(a). However, leave need not be granted if a court determines that plaintiff has already pleaded his best case. *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009).

As explained *supra*, Plaintiff's Fourteenth Amendment unlawful seizure and excessive force claims alleged in his First Amended Complaint fail as a matter of law, and Plaintiff has abandoned his Fourteenth Amendment procedural due process and equal protection claims. As such, any attempt to amend his complaint to restate these claims would be futile. *See McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561-62 (5th Cir. 1998) (noting that dismissal with prejudice is appropriate if it appears that no relief can be granted under any set of facts that could be proven consistent with the plaintiff's allegations). Thus, Plaintiff's request for leave to amend the aforementioned claims should be **DENIED**.

However, it is not clear that Plaintiff cannot allege a claim for deliberate indifference to his serious medical needs. Thus, leave to amend should be **GRANTED** with respect to that claim.

## V. CONCLUSION

In light of the foregoing, Plaintiff's Fourteenth Amendment claims of excessive force, unlawful arrest claims, due process, and equal protection claims should be **DISMISSED WITH PREJUDICE**. Plaintiff's deliberate indifference to serious medical needs claim should be **DISMISSED WITHOUT PREJUDICE** to it being amended to state a viable claim.

**SO RECOMMENDED** on December 19, 2016.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE